UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SARITA WILSON,

                                 Plaintiff,

     - against -

MID-HUDSON FORENSIC PSYCHIATRIC
CENTER, KRISTEN ORLANDO, EXECUTIVE
DIRECTOR, AND ANN MARIE T. SULLIVAN,
COMMISSIONER OF OFFICE OF MENTAL
HEALTH,

                                 Defendants.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 23-CV-8911 (CS)

Appearances:

Sarita Wilson
Middletown, New York
*Pro Se Plaintiff*

Elizabeth Filatova
Assistant Attorney General
Office of the Attorney General of the State of New York
New York, New York
*Counsel for Defendants*

Seibel, J.

       Defendants Mid-Hudson Forensic Psychiatric Center ("MHFPC"), Kristen Orlando and

Ann Marie T. Sullivan (collectively, "Defendants") have moved to dismiss Plaintiff's Second

Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF

No. 31.) For the reasons set forth below, Defendants' motion is GRANTED.

## I.    **BACKGROUND**

       I accept as true the facts, but not the conclusions, set forth in Plaintiff's Second Amended

Complaint. (*See* ECF No. 18 ("SAC").) Because Plaintiff is proceeding *pro se*, I also consider

factual allegations included in Plaintiff's preceding complaints, (ECF No. 1 ("Compl."); ECF No. 8 ("FAC")), and her correspondence and opposition papers, (ECF Nos. 17, 27, 28, 39), as well as the materials attached thereto, to the extent those factual allegations are consistent with the SAC.[1] *See Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, No. 22-CV-3085, 2024 WL 168282, at *1 & n.5 (S.D.N.Y. Jan. 12, 2024) ("Because plaintiff is proceeding *pro se*, the Court considers new allegations in her opposition, to the extent they are consistent with the amended complaint."); *Brown v. Twitter, Automattic Inc.*, No. 19-CV-6328, 2021 WL 3887611, at *6 n.8 (S.D.N.Y. Aug. 31, 2021) ("The Court will consider new factual allegations in Plaintiff's briefing where they are consistent with the operative pleadings."); *Voltaire v. Westchester Cnty. Dep't of Soc. Servs.*, No. 11-CV-8876, 2016 WL 4540837, at *3 (S.D.N.Y. Aug. 29, 2016) ("[A] court is permitted to consider factual allegations in *pro se* plaintiff['s] preceding complaints in order to supplement those in amended complaints."); *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may give *pro se* plaintiff the benefit of considering facts in original complaint even if they have not been repeated in amended complaint); *Brown v. Doe*, No. 13-CV-8409, 2014 WL 5461815, at *1 n.1 (S.D.N.Y. Oct. 28, 2014) (considering allegations that "appear in documents attached to the Complaint and in Plaintiff's subsequent letters to the Court" because "[i]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint").[2]

---

[1] All citations to documents submitted by Plaintiff use the page numbers generated by the Court's Electronic Case Filing ("ECF") system.

[2] The Court will send Plaintiff copies of any unpublished opinions cited in this Opinion.

A.    <u>Facts</u>

Plaintiff Sarita Wilson worked at the MHFPC for over seventeen years, starting as a Security Hospital Treatment Assistant in April 2005 and becoming a Rehabilitation Assistant in 2017.  (SAC ¶¶ 8-9.)  In the latter role, "she led and planned group rehabilitation activities and developed group protocols and curriculum with the patients at the Forensic Psychiatric center." (*Id.* ¶ 10.)

On October 6, 2021, the New York State Office of Mental Health ("OMH") issued an emergency regulation requiring all staff working in psychiatric hospitals to receive at least one dose of the COVID-19 vaccine by November 1, 2021.  *See* 14 N.Y.C.R.R. § 557.5 (Oct. 6, 2021) (the "OMH Mandate").  (*See* SAC ¶ 11 (referencing the OMH Mandate).)   "Staff" was defined to include "all persons employed or affiliated with a Hospital, whether paid or unpaid, including but not limited to employees, members of the medical, nursing, and other treatment staff, contract staff, students, and volunteers." 14 N.Y.C.R.R. § 557.4(f) (Oct. 6, 2021).[3]  While the OMH Mandate provided for "reasonable accommodation[s]" for staff members with a "documented pre-existing health condition that prevents them from complying with the vaccine requirements," it did not mention any form of religious exemption.  *See id.* § 557.5(c) (Oct. 6, 2021).

On October 25, 2021, Plaintiff submitted an application to the Human Resources Department at MHFPC requesting a religious exemption from the vaccine requirement.  (*See* SAC ¶ 13.)  In her request, Plaintiff described herself as a "deeply spiritual person with certain religious beliefs from different faiths" and stated that her belief that "the body is the temple of

---

[3] OMH no longer enforces this regulation, *see* 45 N.Y. Reg. 11 (Aug. 30, 2023), but this does not impact my analysis because the events at issue took place while the rule was in effect in 2021.

the 'Spirit' or 'Holy Spirit' and it is sacred and should be honored" prevented her from consenting to a vaccine. (*Id.* at 13.) When an OMH employee called Plaintiff to ask what accommodation she sought, she explained that she wished to remain at her job unvaccinated and continue to comply with the masking, testing, and social distancing protocols that were already in place. (*Id.* ¶¶ 14-16.) Plaintiff then mailed a "Notice of Declaration for Vaccine Exemption" and an accompanying affidavit, (*id.* at 15-28), to Kristen Orlando, the Executive Director of MHFPC, and Ann Marie T. Sullivan, the Commissioner of OMH (together, the "Individual Defendants"), (*id.* ¶ 20). The affidavit explained that it was "Against [Plaintiff's] Religious Convictions to take, receive or partake in any administered form of any synthetic substance(s)." (*Id.* at 20.) Over the next ten days, Plaintiff received several letters from OMH and MHFPC officials informing her that her request was denied. (*Id.* ¶¶ 21-22.) The letters explained that her job required her to be "directly involved in an inpatient area," (*id.* ¶ 21), noted that she had not identified any alternate accommodation besides an outright exemption, and stated that that would constitute an undue hardship, (*id.* ¶ 22). The letters also warned Plaintiff that she would be suspended without pay if she failed to get vaccinated by November 17, 2021. (*Id.*) Plaintiff refused to be vaccinated and on November 18, 2021 received a Notice of Discipline informing her that she was suspended without pay. (*Id.* ¶ 25.) After Plaintiff had been suspended for seven months, a union arbitration hearing was conducted on July 13, 2022, during which she informed the arbitrator that she was willing to wear a mask but not to receive the vaccine. (*Id.* ¶¶ 26, 28-29.) After this arbitration hearing, Plaintiff was officially terminated. (*Id.* ¶ 29.)

### B.   <u>Procedural History</u>

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 10, 2022. (*Id.* ¶ 5.) On July 7, 2023, Plaintiff received a

right-to-sue letter from the EEOC informing her that "the Commission [was] unable to conclude that the evidence establishe[d] a violation of Title VII" and that she had ninety days from receipt of the letter to pursue a lawsuit against MHFPC.  (*Id.* ¶ 6; Compl. at 8-9.)  Plaintiff filed her Complaint ninety-one days later on October 6, 2023, asserting that MHFPC violated Title VII of the Civil Rights Act of 1964 ("Title VII") by refusing to grant her religious exemption request, suspending her without pay, and terminating her employment.  (*See generally* Compl.)  On October 26, 2023, she filed the FAC, which provided additional factual details and added OMH as a defendant.  (*See generally* FAC.)  On January 29, 2024, MHFPC and OMH filed a pre-motion letter in anticipation of their motion to dismiss and requested a conference.  (ECF No. 15.)  Plaintiff filed a pre-motion letter in response on February 29, 2024.  (*See* ECF No. 17.)

At the first pre-motion conference on March 8, 2024, the Court granted Plaintiff leave to amend her FAC and set a briefing schedule.  (*See* Minute Entry dated Mar. 8, 2024.)  On April 8, 2024, Plaintiff filed the SAC, which named the Individual Defendants and removed OMH as a defendant.  (*See generally* SAC.)  The SAC also added claims against all defendants under the New York State Human Rights Law ("NYSHRL") and the Due Process Clause of the Fourteenth Amendment, seeking both injunctive relief and monetary damages.  (*Id.*)

Defendants filed a second pre-motion letter on June 26, 2024, (*see* ECF No. 23), and Plaintiff filed a pre-motion letter in response on July 23, 2024, (*see* ECF No. 27).  The Court held another pre-motion conference on July 30, 2024, and granted Plaintiff leave to once again amend her complaint.  (*See* Minute Entry dated July 30, 2024.)  Rather than filing another amended complaint, Plaintiff filed a letter on August 30, 2024, setting forth additional facts and arguments.  (*See* ECF No. 28.)  In light of Plaintiff's failure to amend, the Court directed the defendants to move against the most recent amended complaint, but agreed to consider any new

facts contained in the letter due to Plaintiff's *pro se* status.  (*See* ECF No. 30.)  The instant

motion followed.  (*See* ECF No. 31.)

II.    <u>**LEGAL STANDARDS**</u>

A.    <u>**Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction**</u>

"A federal court has subject matter jurisdiction over a cause of action only when it 'has

authority to adjudicate the cause' pressed in the complaint."  *Arar v. Ashcroft*, 532 F.3d 157, 168

(2d Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425

(2007)), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir. 2009).[4]

"Determining the existence of subject matter jurisdiction is a threshold inquiry, and a

claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the

district court lacks the statutory or constitutional power to adjudicate it."  *Id.*  "When jurisdiction

is challenged, the [party asserting jurisdiction] bears the burden of showing by a preponderance

of the evidence that subject matter jurisdiction exists, and the district court may examine

evidence outside of the pleadings to make this determination."  *Id.*  "The court must take all facts

alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but

jurisdiction must be shown affirmatively, and that showing is not made by drawing from the

pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547

F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010).  When the parties

move to dismiss both for lack of subject matter jurisdiction and on other grounds such as failure

to state a claim upon which relief can be granted, the Court must address the issue of subject

---

[4] Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.

matter jurisdiction first.  *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

### B.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  While Rule 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

### C.    *Pro Se* **Plaintiffs**

Complaints by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *see St. Hillaire v. Montefiore Med. Ctr.*, No. 23-CV-4763, 2024 WL 167337, at *2 (S.D.N.Y. Jan. 16, 2024).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010); *see St. Hillaire*, 2024 WL 167337, at *4.

### D.    **Documents Properly Considered**

When deciding a motion to dismiss under Rule 12(b)(6):

> a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.  For a document to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint[;] mere notice or possession is not enough.  And even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and it must be clear that there exist no material disputed issues of fact regarding the relevance of the document.

*United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *see Solano v. New York*, No. 20-CV-1378, 2021 WL 4134793, at *3 (N.D.N.Y. Sept. 10, 2021); *170 Mercer LLC v. Rialto Cap. Advisors, LLC*, No. 20-CV-2496, 2021 WL 1163649, at *2 (S.D.N.Y. Mar. 25, 2021).  The Court may therefore consider the documents attached to Plaintiff's Complaint, FAC, and SAC.

III.    **DISCUSSION**

A.    **Title VII of the Civil Rights Act of 1964**

For the reasons discussed below, Plaintiff's Title VII claim is both time-barred and fails

on the merits.

1.    **Timeliness**

As a threshold matter, Plaintiff's Title VII claim is barred because she failed to file within

ninety days of receiving her right-to-sue letter from the EEOC as the statute requires.  *See* 42

U.S.C. §§ 2000e-5(f)(1); *see also Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir.

1996) ("In order to be timely, a claim under Title VII or the ADEA must be filed within 90 days

of the claimant's receipt of a right-to-sue letter.").  "[I]n the absence of a recognized equitable

consideration, the court cannot extend the limitations period by even one day." *Evans v. N.Y.C.*

*Dep't of Educ.*, No. 23-8119-CV, 2024 WL 4501963, at *2 (2d Cir. Oct. 16, 2024) (summary

order).  While equitable tolling is appropriate where plaintiff can demonstrate that she "(1) has

acted with reasonable diligence during the time period she seeks to have tolled, and (2) has

proved that the circumstances are so extraordinary that the doctrine should apply," *Grys v.*

*ERIndustrial Sales, Inc.*, 553 F. App'x 61, 62 (2d Cir. 2014) (summary order), "ignorance of the

law [is] not [an] extraordinary circumstance[] that justif[ies] equitable tolling," *see Hengjin Sun*

*v. China 1221, Inc.*, No. 12-CV-7135, 2015 WL 5542919, at *7 (S.D.N.Y. Aug. 12, 2015), and it

is well-established that *pro se* status alone does not justify untimeliness, *see Baldwin Cnty.*

*Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (*per curiam*) (*pro se* plaintiff's failure "to act

diligently cannot invoke equitable principles to excuse that lack of diligence"); *see also Evans*,

2024 WL 4501963, at *2 (district court properly determined *pro se* plaintiff's complaint was

time-barred after plaintiff filed complaint one day late, and declining to toll limitations period);

*Perez v. Mason Tenders Dist. Council Tr. Funds*, 742 F. App'x 584, 585 (2d Cir. 2018)

(summary order) (no abuse of discretion in declining to equitably toll limitations period where

*pro se* plaintiff was neither reasonably diligent nor impeded by extraordinary circumstances);

*Ayala v. U.S. Postal Serv.*, 727 F. App'x 15, 17 (2d Cir. 2018) (summary order) (declining to toll

limitations period where pro se plaintiff filed complaint one day late); *Grys*, 553 F. App'x at 62

(affirming dismissal of complaint filed two days late).

 Plaintiff has provided no explanation for her failure to timely file outside of her *pro se*

status and lack of familiarity with the court system.  (*See* SAC ¶ 7; ECF No. 28 at 3.)  While she

suggests in her reply that there may have been "delays in receiving EEOC documentation," (*see*

ECF No. 39 ("P's Mem.") at 5), she does not clarify what these delays were, and it is clear from

the right-to-sue letter itself that she received it via email on July 7, 2023, (*see* Compl. at 8-9).

Plaintiff even admits that her failure to meet the filing deadline resulted from her own

miscalculation as to what the deadline was.  (*See* SAC ¶ 7; ECF No. 28 at 3.)  Because courts

cannot extend filing deadlines where the delay results from carelessness rather than extraordinary

circumstances outside of the plaintiff's control – even by one day, *see Evans*, 2024 WL 4501963,

at *2, and even where the plaintiff is acting *pro se*, *see Baldwin Cnty. Welcome Ctr.*, 466 U.S. at

151 – Plaintiff's Title VII claim is time-barred and must be dismissed.  Even if Plaintiff's Title

VII claim were timely, however, it would nonetheless fail on the merits.

  **2.**  <u>**Merits**</u>

 First, to the extent that Plaintiff asserts a Title VII claim against the Individual

Defendants, "it is long settled that individual defendants may not be subject to liability under

Title VII." *Williams v. N.Y.C. Dep't of Educ.*, No. 17-CV-1996, 2018 WL 4735713, at *4

(S.D.N.Y. Sept. 29, 2018) (citing *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir.

2004)).  Thus, the Title VII claim as asserted against the Individual Defendants must be dismissed.

Plaintiff's Title VII claim against MHFPC fares no better.  "[A] plaintiff asserting a Title VII religious-discrimination claim must plausibly allege that (1) [she] held a bona fide religious belief conflicting with an employment requirement; (2) [she] informed [her] employers of this belief; and (3) [she] was disciplined for failure to comply with the conflicting employment requirement."  *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023) (summary order).  Title VII defines "religion" as including "all aspects of religious observance and practice, as well as belief," and imposes an obligation on an employer "to reasonably accommodate to an employee's . . . religious observance or practice" unless doing so would cause "undue hardship on the conduct of the employer's business."  42 U.S.C. § 2000e(j).  "A reasonable accommodation is one that eliminates the conflict between the employment requirement and the employee's religious practice."  *Conde*, 2024 WL 168282, at *7.  Accordingly, to state a claim for religious discrimination under Title VII for failing to accommodate,[5] an employee must plausibly allege that she "'actually requires an

---

[5] To the extent that the SAC can be read to assert a disparate treatment claim in addition to a failure to accommodate claim, this claim also fails.  To plead a disparate treatment claim, Title VII requires a plaintiff to allege that her employer discriminated against her because of her race, color, religion, sex, or national origin.  *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).  Absent direct evidence of discrimination, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023).  Plaintiff's claim fails on both the second and fourth elements.  Courts in this Circuit have found that failure to comply with a vaccination requirement imposed by an employer renders an employee not qualified for the purposes of bringing a Title VII discrimination claim.  *See Brown v. S. Shore Univ. Hosp.*, No. 23-CV-6374, 2025 WL 71730, at *10 (E.D.N.Y. Jan. 10, 2025) (collecting cases).  And nothing in the pleadings raises a plausible inference that MHFPC suspended or fired Plaintiff because of her religious beliefs.

accommodation of . . . her religious practice' and that 'the employer's desire to avoid the prospective accommodation was a motivating factor in an employment decision.'"  *Lowman v. NVI LLC*, 821 F. App'x 29, 31 (2d Cir. 2020) (summary order) (quoting *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773-74 (2015)).

"An employer does not violate Title VII, however, if it can show that the prospective accommodation 'would cause the employer to suffer an undue hardship.'"  *D'Cunha*, 2023 WL 7986441, at *2 (quoting *Cosme v. Henderson*, 287 F.3d 152, 158 (2d Cir. 2002)); *see Corrales v. Montefiore Med. Ctr.*, No. 22-CV-3219, 2023 WL 2711415, at *5 (S.D.N.Y. Mar. 30, 2023) ("Thus, when an employee has a genuine religious practice or observance, the employer, once notified, must offer the aggrieved employee a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship.").  "[T]he undue hardship must be more than *de minimis* – it must be 'substantial in the overall context of an employer's business.'"  *Does 1-2 v. Hochul*, No. 22-2858, 2024 WL 5182675, at *3 (2d Cir. Dec. 20, 2024) (summary order) (quoting *Groff v. DeJoy*, 600 U.S. 447, 468 (2023)), *petition for cert. docketed*, No. 24-1015 (U.S. Mar. 24, 2025).  While undue hardship is an affirmative defense, an employer may raise it on a pre-answer motion to dismiss if the facts establishing the defense are clear from the face of the complaint.  *See id.*; *D'Cunha*, 2023 WL 7986441, at *2; *Lowman*, 821 F. App'x at 32.

---

While the SAC baldly alleges that Plaintiff's "sincere religious belief . . . was the substantial motivating factor in Defendants [sic] decision to terminate Plaintiff's employment," (SAC ¶ 35), legal conclusions are not entitled to an assumption of truth, *see Iqbal*, 556 U.S. at 679, and the well-pleaded factual allegations in the SAC belie this conclusion.  As Plaintiff acknowledges, her termination was a direct result of her failure to comply with the OMH Mandate, which applied to all staff members.  (SAC ¶¶ 25, 29.)  *See D'Cunha v. Northwell Health Sys.*, No. 22-CV-988, 2023 WL 2266520, at *2 (S.D.N.Y. Feb. 28, 2023) (complaint did not give rise to an inference of discrimination where plaintiff alleged that "she was terminated because [her employer] insisted that she take a vaccine – not because of her religion"), *aff'd*, 2023 WL 7986441 (2d Cir. Nov. 17, 2023) (summary order).

Here, MHFPC does not dispute that Plaintiff plausibly alleges a *prima facie* case for failure to accommodate under Title VII, but instead argues that the accommodation sought by Plaintiff – a religious exemption from the COVID-19 vaccination requirement – would have posed an undue hardship because it would have required MHFPC to violate OMH regulations and risk the health and safety of patients and other employees. (*See* ECF No. 32 ("Ds' Mem.") at 12-16.) MHFPC is correct on both fronts.

First, Title VII cannot be used to require employers to break the law. *See D'Cunha*, 2023 WL 7986441, at *3 ("[T]he burden placed on an employer from violating a state law, like the State Mandate in this case, is both excessive and unjustifiable."); *Bey v. City of N.Y.*, 999 F.3d 157, 170 (2d Cir. 2021) ("Title VII cannot be used to require employers to depart from binding federal regulations."); *Lowman*, 821 F. App'x at 31-32 (affirming dismissal of Title VII complaint where requested religious accommodation would cause employer undue hardship by forcing it to violate the law); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 830 (9th Cir. 1999) ("[C]ourts agree that an employer is not liable under Title VII when accommodating an employee's religious beliefs would require the employer to violate federal or state law."). At the time MHFPC denied Plaintiff's religious exemption, the OMH Mandate required all staff at psychiatric hospitals to become vaccinated. 14 N.Y.C.R.R. § 557 (Oct. 6, 2021). Thus, MHFPC would have violated the state law had it granted Plaintiff's requested religious exemption.

Further, had MHFPC granted the exemption, it also would have faced the obvious hardship associated with the increased health and safety risk posed to other employees and patients. This alone constitutes an undue burden. *See Parks v. Montefiore Med. Ctr.*, No. 23-CV-4945, 2024 WL 917330, at *3 (S.D.N.Y. Mar. 4, 2024) (increased exposure risk of hospital's patients to COVID-19 "separately qualifies as an undue hardship"); *Algarin v. NYC Health +*

*Hosps. Corp.*, 678 F. Supp. 3d 497, 511 (S.D.N.Y. 2023) ("[P]ermitting Plaintiff to potentially expose other workers at [the Hospital] to the COVID-19 virus . . . [is a] significant hardship[] that create[s] an undue burden on Defendant . . . ."), *aff'd sub nom. Algarin v. N.Y.C. Health & Hosps. Corp.*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024) (summary order); *Does 1-2 v. Hochul*, 632 F. Supp. 3d 120, 145 (E.D.N.Y. 2022) ("Defendants persuasively argue that in addition to requiring the defendants to violate the law, exempting the plaintiffs from the vaccine requirement would expose vulnerable patients and nursing home residents, as well as other healthcare workers, to the COVID-19 virus, which is obviously a significant hardship."), *aff'd in part, vacated in part, remanded on other grounds*, No. 22-2858, 2024 WL 5182675 (2d Cir. Dec. 20, 2024) (summary order).

Courts in this Circuit have regularly dismissed on undue hardship grounds Title VII claims brought by similarly situated plaintiffs who sought blanket religious exemptions that would have violated the state regulation mandating vaccination. *See Muslim v. Sagamore Child.'s Psychiatric Ctr.*, No. 22-CV-7850, 2024 WL 3431959, at *6-7 (E.D.N.Y. July 15, 2024) (dismissing failure to accommodate claim where plaintiff sought blanket exemption from the OMH mandate, which "would cause undue hardship as a matter of law"); *Jackson v. N.Y. State Off. of Mental Health - Pilgrim Psychiatric Ctr.*, No. 23-CV-4164, 2024 WL 1908533, at *7 (E.D.N.Y. May 1, 2024) (same); *Smith v. NYS OMH S. Beach Psychiatric Ctr.*, No. 23-CV-4401, 2024 WL 730492, at *3 (E.D.N.Y. Feb. 22, 2024) (same), *appeal dismissed*, No. 24-743, 2024 WL 4336995 (2d Cir. Sept. 11, 2024); *see also Does 1-2*, 2024 WL 5182675, at *4 (requested accommodation that would have violated state regulation is undue hardship); *Brown*, 2025 WL 71730, at *11-12 (same); *Addonizio v. Nuvance Health*, No. 23-CV-1582, 2024 WL 2958795, at *7 (S.D.N.Y. June 11, 2024) (same); *Corrales*, 2023 WL 2711415, at *7-8 (same); *Riley v.*

*N.Y.C. Health & Hosps. Corp.*, No. 22-CV-2736, 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023) (same); *Marte v. Montefiore Med. Ctr.*, No. 22-CV-3491, 2022 WL 7059182, at *4 (S.D.N.Y. Oct. 12, 2022) (same).

    In the letter she filed in lieu of a third amended complaint, Plaintiff alleges – for the first time – that MHFPC could have provided her with a remote work accommodation.  (*See* ECF No. 28 at 2.)  While Plaintiff may claim that she could have performed her duties remotely, she never alleges that she actually requested remote work as an accommodation.  Indeed, it is clear from her filings that, when asked what accommodation she sought, Plaintiff requested to be exempted from the mandate while continuing to work in person.  (*See* SAC ¶¶ 14-15.)[6]  Even if remote work were theoretically possible, Plaintiff cannot bring a failure to accommodate claim based on an accommodation she never actually requested before being terminated.  *See Greenberg v. Visiting Nurse Servs. in Westchester, Inc.*, No. 23-CV-4252, 2024 WL 4252550, at *9 (S.D.N.Y. Sept. 19, 2024) ("[C]ourts that have allowed Title VII failure-to-accommodate claims involving remote-work requests to survive motions to dismiss have consistently noted that the plaintiffs had, in fact, *requested* such an accommodation, and they have certainly not determined that baldly asserting that remote work was a theoretical possibility for the plaintiff was sufficient to survive a motion to dismiss.") (emphasis in original); *Parks v. Montefiore Med. Ctr.*, No. 23-CV-

_____

[6] Although Plaintiff insists that she was willing to "wear the mask and continue with the other protocols," (SAC ¶ 15), this does not transform her exemption request into an accommodation request, as the OMH Mandate did not permit staff members to wear masks in lieu of vaccination.  *See Brown*, 2025 WL 71730, at *15 (employee who requested to continue masking and testing in lieu of being vaccinated sought an exemption not permitted by vaccine mandate even though he phrased it as an "accommodation"); *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-CV-2929, 2023 WL 3467143, at *5 & n.4 (S.D.N.Y. May 15, 2023) (plaintiffs' request to remain unvaccinated and "be allowed to continue their regular employment while following the same health and safety protocols – testing, masking, social distancing, and sanitizing – that were in place before the vaccination policy was announced" amounted to request for blanket religious exemption that would violate state mandate).

4945, 2025 WL 370830, at *3 (S.D.N.Y. Feb. 3, 2025) (plaintiff's assertion that he could have worked remotely was insufficient to state claim where complaint never alleged that he had actually requested remote work as an accommodation).

Even if Plaintiff had requested remote work, however, the SAC makes clear that her job duties required her to work face-to-face with patients. (*See* SAC ¶ 10 ("In her position as a Rehabilitation Assistant 2, she led and planned group rehabilitation activities and developed group protocols and curriculum with the patients at the Forensic Psychiatric center."); *id.* ¶ 21 (OMH letter denying exemption stated that Plaintiff's job "required [her] to be directly involved in an inpatient area").) Given the patient-facing nature of this role, the Court cannot imagine how MHFPC could have provided an accommodation that neither violated the OMH Mandate nor resulted in an undue burden to MHFPC, such as by requiring it to hire another employee to cover Plaintiff's in-person duties. *See Conde*, 2024 WL 168282, at *8. Particularly in light of the stress placed on healthcare facilities in the midst of the COVID-19 pandemic, "relieving plaintiff of her patient-facing duties would have imposed an undue hardship on defendants." *Id.*; *see Brown*, 2025 WL 71730, at *16; *Devita v. Mount Sinai Hosp.*, No. 22-CV-9826, 2024 WL 3046121, at *6 (S.D.N.Y. June 18, 2024); *D'Cunha*, 2023 WL 2266520, at *3; *Shahid-Ikhlas v. N.Y. & Presbyterian Hosp., Inc.*, No. 22-CV-10643, 2023 WL 3628151, at *5 (S.D.N.Y. May 5, 2023), *report and recommendation adopted*, 2023 WL 3626435 (S.D.N.Y. May 24, 2023).[7]

---

[7] As Defendants point out, (*see* Ds' Mem. at 15), it is unclear whether allowing remote work as an accommodation would even be permissible under the OMH Mandate. In interpreting an analogous state mandate, *see* 10 N.Y.C.R.R. § 2.61 (Aug. 26, 2021), the Second Circuit noted that, while the mandate did not specifically provide for religious exemptions, employers may have been able to grant accommodations to workers with religious objections "by employing them in a manner that removes them from the Rule's definition of 'personnel.'" *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 368, 370 (2d Cir. 2021) (*per curiam*). Because the mandate's definition of personnel only covered those "who engage in activities such that if they were

Accordingly, Plaintiff's Title VII failure to accommodate claim against MHFPC is dismissed.

## B.    Section 1983 Claim

Plaintiff also asserts a cause of action under 42 U.S.C. § 1983 based on alleged violations of her Fourteenth Amendment rights to procedural due process, (*see* SAC ¶ 48), and substantive due process, (*see* P's Mem. at 5).  She seeks both injunctive relief and monetary damages.  (*See* SAC at 9-10.)  To the extent that Plaintiff seeks damages against the Individual Defendants in their official capacities or any relief against MHFPC, the Eleventh Amendment requires the Court to dismiss for lack of subject matter jurisdiction.  The Court further concludes that Plaintiff's § 1983 claim fails on the merits.

### 1.    Sovereign Immunity

Plaintiff's claim against MHFPC is clearly barred by the Eleventh Amendment, which "bars federal courts from exercising subject matter jurisdiction over claims against states or their agencies absent their consent to such suit or an express statutory waiver of immunity."[8]

---

infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease," 10 N.Y.C.R.R. § 2.61(a)(2) (Aug. 26, 2021), allowing employees to work remotely effectively removed them from this definition, *see Jackson*, 2024 WL 1908533, at *8.  The OMH Mandate, in contrast, provided that "All Staff who work in Hospitals will be required to be vaccinated," 14 N.Y.C.R.R. § 557.5(a) (Oct. 6, 2021), and defined "Staff" as "all persons employed or affiliated with a Hospital . . . whether paid or unpaid, including but not limited to employees, members of the medical, nursing, and other treatment staff, contract staff, students, and volunteers," *id.* § 557.4(f) (Oct. 6, 2021).  Accordingly, depending on whether remote workers could still be said to work "in" a hospital, allowing Plaintiff to work remotely while unvaccinated may still have required MHFPC to violate the OMH Mandate.  Because Plaintiff does not allege that she ever requested remote work, and because in any event allowing her to work remotely would have imposed an undue burden on MHFPC due to the patient-facing nature of her position, the Court need not decide this question.

[8] Plaintiff's Title VII claim is not barred, as Congress authorized employees to sue the State as an employer via Title VII.  *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 452 (1976).

*Percesepe v. N.Y. State Dep't of Lab.*, No. 94-CV-3005, 1996 WL 1057165, at *2 (E.D.N.Y. Dec. 12, 1996), *aff'd*, 125 F.3d 844 (2d Cir. 1997); *see Lee v. Saltzman*, No. 10-CV-103S, 2011 WL 5979162, at *3 (W.D.N.Y. Nov. 27, 2011) (collecting cases).  Congress did not abrogate state immunity through § 1983, *see Hamzik v. Off. for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 275-76 (N.D.N.Y. 2012) (collecting cases), nor has MHFPC – a state agency – consented to be sued, (*see generally* Ds' Mem.).

Plaintiff explicitly states that she is suing the Individual Defendants in their official capacities, (SAC ¶ 4), but that is similarly impermissible, as claims for damages against state officials in their official capacity is "no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see Bright v. Annucci*, No. 18-CV-11111, 2024 WL 3012043, at *10 (S.D.N.Y. June 13, 2024).[9]

As such, Plaintiff's only potential avenue for relief under § 1983 would be seeking prospective injunctive relief against the Individual Defendants under the *Ex parte Young* doctrine.  "*Ex parte Young*, 209 U.S. 123 (1908), and its progeny permit suits for prospective injunctive relief against state officers in their official capacities."  *Idlibi v. Burgdorff*, No. 23-7384, 2024 WL 3199522, at *3 (2d Cir. June 27, 2024) (summary order), *cert. denied*, 145 S. Ct. 547 (2024).  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Bright*, 2024 WL 3012043, at *10.  Plaintiff requests prospective relief in the form of an injunction and

---

[9] Even if I were to disregard Plaintiff's statement that she is suing the Individual Defendants in their official capacities and construe the SAC as naming them in their individual capacities, the § 1983 claims would fail for the reasons set forth in sections III.B.2 and 3 below.

an order requiring defendants to promulgate and carry out "policies, practices and programs which provide equal employment opportunities." (*See* SAC at 9). Plaintiff does not, however, allege any "ongoing violation of federal law" that the relief she seeks would remedy – particularly in light of the fact that the OMH Mandate is no longer enforced. *See* 45 N.Y. Reg. 11 (Aug. 30, 2023) ("Effective immediately, OMH will cease citing for failing to comply with the requirements of 14 NCYRR Part 557 . . . ."); *cf. Hogue v. Scott*, No. 20-CV-218, 2021 WL 6050864, at *3 (D. Vt. Dec. 21, 2021) (*Ex parte Young* exception does not apply where emergency executive order has expired). Accordingly, the *Ex parte Young* exception is inapplicable, and Plaintiff's § 1983 claim is dismissed for lack of subject matter jurisdiction. Nonetheless, I will address the merits of Plaintiff's § 1983 claim in an excess of caution.

### 2.      Procedural Due Process

 "A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process." *Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019). Process is generally considered constitutionally adequate so long as it includes notice and an opportunity to respond. *See Marciano v. de Blasio*, 589 F. Supp. 3d 423, 436 (S.D.N.Y. 2022) (notice of vaccine mandate before compliance deadline and opportunity to seek accommodation was constitutionally adequate process prior to termination), *appeal dismissed sub nom. Marciano v. Adams*, No. 22-570, 2023 WL 3477119 (2d Cir. May 16, 2023); *O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) ("[p]re-deprivation process need not be elaborate" and notice of deprivation and opportunity to voice objections sufficed).

Plaintiff asserts that there were "procedural deficiencies in her termination and denial of religious accommodations" that "deprived [her] of a meaningful opportunity to be heard." (*See*

P's Mem. at 5.)  Even assuming that Plaintiff had a property right in her continued

employment,[10] the facts alleged in the SAC clearly demonstrate that she received constitutionally

adequate process.  Before she was suspended, she received notice of the OMH Mandate and the

opportunity to apply for an accommodation, she spoke with an OMH employee on the phone

regarding her requested exemption, and she received several letters informing her that her

exemption request had been denied and that she would be suspended without pay if she failed to

comply with the mandate.  (SAC ¶¶ 11-15, 20-22.)  This pre-deprivation process more than

satisfies constitutional requirements.  *See O'Connor*, 426 F.3d at 198.

Plaintiff also had the opportunity to be heard at a formal arbitration hearing after her

suspension and prior to her termination.  The Second Circuit has "held on several occasions that

there is no due process violation where, as here, pre-deprivation notice is provided and the

deprivation at issue can be fully remedied through the grievance procedures provided for in a

collective bargaining agreement."  *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008) (collecting

cases); *see also Kane v. de Blasio*, 623 F. Supp. 3d 339, 361 (S.D.N.Y. 2022) (notice of vaccine

mandate, opportunity to request accommodation, and opportunity to challenge termination

through collective bargaining agreement satisfied due process requirements), *aff'd in part,*

---

[10] It is not clear from the SAC and Plaintiff's other submissions that she even satisfies the threshold requirement of a protected property interest.  While "the state-law property interest of government employees who may only be discharged for cause . . . is a constitutionally protected property interest for purposes of the Fourteenth Amendment," *see O'Connor*, 426 F.3d at 196, Plaintiff never alleges or provides any documentation showing that her employment was not at-will, *see Cooper v. Metro. Transp. Auth.*, No. 04-CV-525, 2006 WL 1975936, at *5 (S.D.N.Y. July 14, 2006) (explaining that "[u]nder New York law . . . an employment relationship is presumed to be a hiring at will, terminable at any time by either party" and that "'an at-will government employee generally has no claim based on the Constitution at all'") (quoting *Waters v. Churchill*, 511 U.S. 661, 679 (1994)).  In light of Plaintiff's *pro se* status, and because Plaintiff's claim fails under the second prong of the test regardless, the Court will assume that the first prong is met for the purposes of this motion.

*vacated in part, remanded on other grounds sub nom. New Yorkers For Religious Liberty, Inc. v. City of N.Y.*, 121 F.4th 448 (2d Cir. 2024), *and aff'd in part, vacated in part, remanded on other grounds sub nom. New Yorkers for Religious Liberty, Inc. v. New York*, 125 F.4th 319 (2d Cir. 2024). Because the facts alleged in the SAC demonstrate that the process afforded Plaintiff surpassed what is constitutionally required, her procedural due process claim fails.[11]

### 3. <u>Substantive Due Process</u>

In her opposition, Plaintiff asserts that Defendants' actions also violated her substantive due process rights. (*See* P's Mem. at 5.) Although Plaintiff did not raise this claim in any of her complaints, the Court will address it in light of her *pro se* status. *See Brown*, 2014 WL 5461815, at *1 n.1; *Conde*, 2024 WL 168282, at *1 & n.5.

Plaintiff alleges that Defendants "violated fundamental constitutional rights" in their refusal to exempt her from the OMH Mandate, (*see* P's Mem. at 5), but courts have held that making continued employment contingent on vaccination does not violate any fundamental right,

---

[11] To the extent that the SAC can be interpreted to contest the procedures leading to the denial of Plaintiff's requested exemption in addition to those involving her suspension and termination, the Court finds that Plaintiff received adequate process in that determination as well. She was notified multiple times that her request was denied, OMH called her to discuss the requested accommodation, and OMH explained that an exemption was not feasible in a patient-facing job. (*See* P's Mem. at 5; SAC ¶¶ 11-15, 20-22.) These procedures were sufficient. *See Bartlett v. N.Y. State Bd. of L. Exam'rs*, 970 F. Supp. 1094, 1100 (S.D.N.Y. 1997) (finding that, even if "the federal statutes entitling [plaintiff] to accommodations may constitute a sufficient deprivation to entitle plaintiff to predeprivation procedures," notice of denial and opportunity to be heard sufficed to satisfy due process requirements), *aff'd in part, vacated in part on other grounds*, 156 F.3d 321 (2d Cir. 1998), *cert. granted, judgment vacated on other grounds*, 527 U.S. 1031 (1999), *and aff'd in part, vacated in part on other grounds*, 226 F.3d 69 (2d Cir. 2000). Plaintiff's dissatisfaction with the result of her accommodation request does not give rise to a due process violation, because "procedural due process guarantees only a process, not a specific outcome." *Patrick v. Success Acad. Charter Schs., Inc.*, 354 F. Supp. 3d 185, 203-04 (E.D.N.Y. 2018) (collecting cases).

*see We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293-94 (2d Cir.) (*per curiam*), *clarified by* 17 F.4th 368 (2d Cir. 2021); *Andre-Rodney v. Hochul*, 618 F. Supp. 3d 72, 82-83 (N.D.N.Y. 2022). Vaccine mandates like the one at issue here do not force employees to consent to vaccination; they simply condition employment on compliance. *See We The Patriots*, 17 F.4th at 294; *Andre-Rodney*, 618 F. Supp. at 82. While the right to refuse unwanted medical treatment may be fundamental, the right to be employed at a particular hospital or other government entity is not. *Andre-Rodney*, 618 F. Supp. at 82-83; *Kane*, 623 F. Supp. 3d at 360.

Absent a showing that the Defendants' actions violated a fundamental right, Plaintiff cannot succeed on her substantive due process claim unless she can demonstrate that these actions had no rational basis. *See Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 461 (2d Cir. 1996). It is now well-established that employment restrictions predicated on vaccination status are rationally related to the legitimate purpose of protecting public health. *See We The Patriots*, 17 F.4th at 290; *Andre-Rodney*, 618 F. Supp. at 83-84; *Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021) (*per curiam*). Further, denial of an exemption does not violate due process where, as here, the denial is "consistent with the plain requirements" of a valid regulation. *Doe v. Zucker*, 520 F. Supp. 3d 217, 261 (N.D.N.Y. 2021), *aff'd sub nom. Goe v. Zucker*, 43 F.4th 19 (2d Cir. 2022). Because the SAC does not allege any violation of a fundamental right or irrational state conduct, Plaintiff's substantive due process claims are dismissed.

## C.  New York State Human Rights Law Claim

Finally, the SAC asserts a religious discrimination claim under the NYSHRL for failure to accommodate against all Defendants. (*See* SAC ¶¶ 40-47.)[12]

---

[12] While I have dismissed the only federal claims asserted in this action, I may "exercise supplemental jurisdiction over 'claims that are so related to claims in the action within such

As a threshold matter, Plaintiff's NYSHRL claim, like her § 1983 claim, is barred by the Eleventh Amendment. *See Quadir v. N.Y. State Dep't of Lab.*, 39 F.Supp. 3d 528, 537 (S.D.N.Y. 2014) ("New York has not waived its Eleventh Amendment immunity for NYSHRL suits in federal courts."). Moreover, even if the SAC properly sought prospective injunctive relief against the Individual Defendants in their official capacities – which, as discussed above, it does not – Plaintiff could not seek such relief under the NYSHRL. The *Ex parte Young* exception does not apply where the plaintiff seeks to enforce a right based on state, rather than federal, law. *See Dube v. State Univ. of N.Y.*, 900 F.2d 587, 595 (2d Cir. 1990) ("[A] federal court's grant of injunctive relief against a state official may not be based on violations of state law."); *Tessler v. Paterson*, No. 10-CV-9313, 2011 WL 1044208, at *7 (S.D.N.Y. Mar. 11, 2011) ("It is well-established that the Eleventh Amendment bars all claims against the state or state entities for alleged violations of state law without the state's consent."), *aff'd*, 451 F. App'x 30 (2d Cir. 2011) (summary order).

Even if it were not barred by sovereign immunity, Plaintiff's NYSHRL claim would fail. The NYSHRL provides that "'it shall be an unlawful discriminatory practice' for an employer to discharge or discriminate against an employee 'in compensation or in terms, conditions, or privileges of employment' because of the employee's 'creed.'" *Algarin*, 678 F. Supp. 3d at 507 (quoting N.Y. Exec. Law § 296(1)(a)). Like Title VII, the NYSHRL requires employers to offer

---

original jurisdiction that they form part of the same case or controversy.'" *Addonizio*, 2024 WL 2958795, at *5 (quoting 28 U.S.C. § 1367(a)); *see Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 31 (2025) ("The federal court has supplemental jurisdiction over state-law claims sharing a common nucleus of operative fact with the federal-law ones."). Given the "common nucleus of operative fact" between the federal and NYSHRL claims present here, I choose to exercise supplemental jurisdiction over the state law claims. *See Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002) (supplemental jurisdiction proper where federal and state claims "ar[ose] out of approximately the same set of events"); *Van Duser v. Tozzer Ltd.*, No. 23-CV-9329, 2024 WL 4635495, at *4 (S.D.N.Y. Oct. 31, 2024) (to the same effect).

reasonable accommodations to employees if they are able to do so "without undue hardship on

the conduct of the employer's business." *Id.* (quoting N.Y. Exec. Law § 296(10)(a)). The

NYSHRL defines an "undue hardship" as an "accommodation requiring significant expense or

difficulty (including a significant interference with the safe or efficient operation of the

workplace . . . )." N.Y. Exec. Law § 296(10)(d). For the reasons discussed earlier with respect

to Title VII, requiring Defendants to violate the OMH Mandate would constitute an undue

hardship under the NYSHRL, *see Addonizio*, 2024 WL 2958795, at *6-7; *Algarin*, 678 F. Supp.

3d at 509-10, as would relieving her of her duties as a patient-facing employee, *see Conde*, 2024

WL 168282, at *8.

Thus, Plaintiff's NYSHRL claim for failure to accommodate must be dismissed.

## IV.   <u>LEAVE TO AMEND</u>

Finally, I consider whether Plaintiff should be granted leave to amend, which should be

freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound

discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105

(2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied for: 'undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, futility of amendment, etc.'" *Ruotolo v. City of N.Y.*, 514 F.3d

184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended twice, (*see* FAC, SAC), and submitted in connection with

the instant motion additional documents that the Court has considered as supplements to the

SAC, (*see* ECF Nos. 17, 27, 28, 39), after having the benefit of pre-motion letters from

Defendants, (*see* ECF Nos. 15, 23), and the discussions at both the March 8, 2024 and July 30,

2024 pre-motion conferences, (*see* Minute Entry dated Mar. 8, 2024; Minute Entry dated July 30, 2024). Further, the Court granted Plaintiff leave to file a Third Amended Complaint prior to the filing of the instant motion, and Plaintiff elected not to do so. (*See* ECF No. 30.) Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in [her] complaint when [s]he first amended, [s]he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *Williams v. Time Warner Inc.*, No. 09-CV-2962, 2010 WL 846970, at *7-8 (S.D.N.Y. Mar. 3, 2010) (leave to amend properly denied where plaintiff declined to amend after being advised of arguments for dismissal and complaint's deficiencies), *aff'd*, 440 F. App'x 7 (2d Cir. 2011) (summary order); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies."); *Elmore v. Atieh*, No. 23-CV-508, 2024 WL 770768, at *2 (N.D.N.Y. Feb. 26, 2024) (denying leave to amend because "the extension of special solicitude to *pro se* litigants requires only *one* . . .

opportunity to amend" and plaintiff "failed to cure the defects despite having been given an adequate notice of them and a reasonable opportunity to cure them") (emphasis in original); *see also Solomon v. Fordham Univ. Admin., Rose Hill Campus*, No. 22-887, 2023 WL 5689712, at *3 (2d Cir. Sept. 5, 2023) (summary order) (leave to amend properly denied where *pro se* plaintiff was permitted to amend at least three times and did not persuasively argue why a fourth amendment should be permitted); *Pottetti v. Educ. Credit Mgmt. Corp.*, No. 19-CV-4479, 2020 WL 5645194, at *7 (E.D.N.Y. Sept. 22, 2020) (no need to grant leave to amend where *pro se* plaintiff "has had multiple opportunities to properly state h[er] claims").

Further, Plaintiff has not suggested that she is in possession of facts that would cure the deficiencies identified in this ruling. *See Bank v. Gohealth, LLC*, No. 21-1287, 2022 WL 1132503, at *1 (2d Cir. Apr. 18, 2022) (summary order) ("[W]here the plaintiff is unable to demonstrate that [s]he would be able to amend h[er] complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend); *Brown v. N.Y.C. Dep't of Educ.*, No. 20-CV-2424, 2022 WL 4364600, at *4 n.3 (S.D.N.Y. Sept. 21, 2022) (denying leave to amend where *pro se* plaintiff did not provide additional facts to cure identified deficiencies); *see also Todd v. Fields*, No. 20-CV-

3608, 2022 WL 596829, at *6 (S.D.N.Y. Feb. 25, 2022) ("While courts should be more lenient when considering a *pro se* party's motion to amend than when considering that of a represented party, leave to amend is properly denied where all indications are that the *pro se* plaintiff will be unable to state a valid claim.").

Accordingly, the Court declines to grant Plaintiff leave to amend.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 31), and close the case.

**SO ORDERED.**

Dated: May 5, 2025
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

27